**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CRIMINAL ACTION NO. 5:19-CR-156-KKC**

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**

**V.**                      **<u>SENTENCING MEMORANDUM</u>**

**CRYSTAL R. BROTHERTON**                                           **DEFENDANT**

*   *   *   *   *

In advance of the sentencing of Defendant Crystal Brotherton, the United States submits the following sentencing memorandum. When imposing a sentence, the Court must select a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [section 3553(a)]." 18 U.S.C. § 3553(a). Paragraph 2 instructs the Court to consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to provide the defendant with needed training, care, or treatment. *Id.* at § 3553(a)(2). Section 3553(a) also requires the Court to, among other things, consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the guideline range; and (3) the need to provide restitution to any victims of the offense. *See* § 3553(a).

The pre-sentence report outlines Defendant Brotherton's actions in clear detail. [*See* PSR at ¶¶ 7-12.] On the afternoon of June 20, 2019, the Defendant called the 911 Emergency Response telephone system and immediately told the operator that there were bombs at four separate businesses located at the intersection of Bryan Station Road and New Circle Road on the eastern side of Lexington, Kentucky. Adding to the immediacy of the emergency, the Defendant said the bombs would "go off" in 15 minutes unless the buildings were evacuated. Before ending the call, the Defendant twice made the threat to the operator that unless her demands were met, "everyone will die." Fortunately, no bombs were located by the responding Lexington Police and Fire Department units.

The following day, June 21, 2019, Defendant Brotherton made two additional calls to 911, again making false threats that bombs had been placed at the same four businesses and would be detonated unless those businesses were evacuated. On one of these calls, Brotherton used an application that disguised her voice. She also added that she would go to UK's campus and "open fire" unless her demands were met.

The offense calculation for Defendant Brotherton, as noted in the PSR, encompasses the condemnable aspects of her crime. [PSR at ¶¶ 16-26.] It also incorporates her acceptance of responsibility. [Id. at ¶¶ 15; 25.] In this case, the United States asserts that the main § 3553 factors at issue are the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law" and "to afford adequate deterrence" to others considering making similar false threats.

One need only listen to the 911 calls to recognize their seriousness. This was no prank and it necessitated a fulsome response by both Lexington's Fire and Police

Departments. Given the urgency of the response that such threats require, there is an inherent danger for both police officers and firemen as they race to the scene, secure the area, and evacuate businesses. Such scenes are chaotic and misunderstandings can easily occur as the news spreads and crowds potentially rush for exits. Moreover, the danger to the public is compounded because false threats can inhibit the timely response of fire and police units to other actual emergencies.

It is notable that Defendant Brotherton's actions were not limited to one simple mistake in judgment or a momentary loss of self-control. After making the single threat call on June 20, she called 911 back the next day (almost a full 24 hours later) and made two additional threat calls – upping the ante by also threatening to "open fire" on UK's campus. She had the mental forethought to use a voice-disguising application when making one of the threat calls on the second day. She also continued using a cell phone not directly linked to her, knowing it would make the job of tracing the calls more difficult. Furthermore, when Brotherton was initially interviewed by police, she denied any involvement in making the threats. The second day follow-on threats clearly demonstrate that Defendant Brotherton lacked respect for the law.

An additional issue shedding light on the "respect for the law" factor is the bond violation recently ruled on by Magistrate Judge Atkins. (R. 46 Order.) Defendant Brotherton was tested for drug use on October 2, 2019 and then not subsequently tested until January 8, 2020. (Id. at Page ID# 112.) On that date, she was unable to provide a urine sample, even after a two-hour period of waiting, so a sweat patch test was applied. (Id. at 113.) After the sweat patch was removed a week later, on January 15, 2020, and

sent off for testing, it came back positive for marijuana use. (Id.) Despite Brotherton's protestations and the dated hair test from March 4, 2020, which she provided, the government relies on the well-reasoned and researched findings made by Judge Atkins that Brotherton violated this Court's order to refrain from using illegal drugs. (Id. at 112-19.) Her actions, while awaiting sentencing on the underlying violation, demonstrate a continued lack of respect for the law.

As mentioned above, another § 3553 factor for the Court to consider is the need to establish general deterrence for those who might consider crimes similar to the ones committed by Defendant Brotherton. Simply put, a person on the fence about making deadly threats might reconsider if they know a significant term of incarceration could be in their future. Correspondingly, a sentence involving only probation, as requested by Brotherton, will not likely be sufficient to restrain a person considering such actions. Especially in today's world—where fake bomb threats and calls threatening to "open fire" on a school campus cannot be abided—society has a strong interest in general deterrence. Moreover, the Defendant's lack of any previous criminal convictions, while laudable, should not be dispositive for a probationary departure. Threats of this type come not infrequently from first-time offenders who must be equally deterred.

The Defendant's comparison to the outcome in the case of *United States v. Haily Duvall*, 5:18-CR-00173, is inapt. The threats in that case were made online using Snapchat, were less specific in nature, and were subsequently relayed by the perpetrator directly to the University of Kentucky's police department – so Duvall was available for follow-up questioning. The threats by Duvall were also not made over multiple days.

Additionally, Duvall was 19 years-old when she made the fake threats; Brotherton was 31 years-old when she committed the instant offense. Finally, the Court in *Duvall* departed from a guidelines range of 10-16 months to hand down a six-month sentence of incarceration. In this case, Brotherton is requesting probation when the guidelines range is 18-24 months. [PSR at ¶ 51.]

The United States appreciates the report made by the psychologist, Dr. Wygant, but contends that any treatment that the Defendant may need going forward can be provided by the Bureau of Prisons (BOP). In this case, the United States supports a sentence on the low end of the guidelines range in order to satisfy all the § 3553 factors.

Respectfully submitted,

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

By: /s/ William P. Moynahan
William P. Moynahan
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Kentucky
260 W. Vine Street
Lexington, KY 40507
(859) 685-4846

**CERTIFICATE OF SERVICE**

On June 4, 2020, I electronically filed the foregoing using the CM/ECF system, which provides notice to counsel of record.

/s/ William P. Moynahan
Assistant United States Attorney